Betty Hansen et al. [1] v. Commissioner. * Hansen v. Commissioner
Docket Nos. 29419, 29420, 29421.
United States Tax Court
1952 Tax Ct. Memo LEXIS 220; 11 T.C.M. (CCH) 486; T.C.M. (RIA) 52142; May 15, 1952
Henry W. Howard, Esq., 1101 Balfour Bldg., San Francisco, Calif., for the petitioners. T. M. Mather, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in the petitioners' income tax liability for the calendar year 1946 as follows: Betty Hansen
$ 12,558.75
Carl L. Hansen and Norma W. Hansen
12,956.21
Benjamin C. Mickle
4,144.06
These proceedings have been consolidated for hearing and decision. The issues involved are: (1) Whether the value of certain shares of stock which the petitioners Betty Hansen and Carl L. Hansen received in 1946 in consideration for certain information and documents which they had furnished to a litigant constitutes *221 ordinary income under section 22 (a) of the Code. (2) Whether the fair market value of the stock received by the petitioners during 1946 was $25 per share, as the petitioners contend; $61.17 per share, as the respondent has determined; or some other amount. The petitioners filed their income tax returns with the collector for the first district of California. Findings of Fact The facts which have been stipulated are found as facts. The stipulation of facts is incorporated herein by this reference. The findings of fact and conclusions of law of the California Superior Court in the case of Virginia J. Hansen v. Bear Film Co., et al., Case No. 296,867, are also incorporated herein by this reference. In October, 1946, the petitioners Betty Hansen and Carl L. Hansen received the amount of $34,500 and 687 1/2 shares of the preferred stock and 687 1/2 shares of the common stock of the Bear Film Company from Virginia Hansen Vincent pursuant to a written agreement which they had entered into on February 13, 1941, and which was modified on January 7, 1946. The petitioners, Betty and Carl Hansen, had, during 1940 and 1941, supplied Virginia Hansen Vincent with certain information and *222 documentary evidence pertaining to her rights of ownership in the stock of the Bear Film Co. In October, 1946, the petitioners Betty and Carl Hansen assigned under an agreement 275 shares of the stock to the petitioner Benjamin Mickle as compensation for legal services which he had performed on their behalf. For purposes of this proceeding, the parties have agreed that the preferred and common stock were equal in value share for share in October, 1946. The Bear Film Co., a California corporation, is engaged in the business of developing film, finishing photographs, and wholesaling film and cameras used in the finishing of photographs. It has its principal place of business at San Francisco, California, and a branch office at Oakland, California. The Bear Film Co., sometimes hereinafter referred to as Bear, was originally founded as a partnership many years prior to 1921 by Warren Quinn and Oscar Hansen as partners. It was organized as a corporation in 1921 and was authorized to issue at a par value of one dollar per share 5,000 shares of single class capital stock. The stock was divided equally between Warren Quinn and Oscar Hansen, each receiving 2,500 shares. In 1924 the Articles *223 of Incorporation were amended for the purpose of changing the capital stock structure of Bear. The amended Articles authorized Bear to issue 2,500 shares of preferred stock and 2,500 shares of common stock. Upon surrender of their certificates of single class stock, 2,500 shares of preferred stock and 2,500 shares of common stock were issued to Oscar Hansen and Warren Quinn, respectively. In 1927 Oscar acquired by purchase for the amount of $30,000 the 2,500 shares of common stock held by Warren Quinn. Oscar, alone, directed the management and operations of the business of Bear, as president, general manager, and member of the board of directors. Also, Oscar had virtually absolute control over the board of directors of the corporation and dominated its policies. In 1926 and 1927 Oscar transferred his shares of preferred and common stock in trust, appointing his mother, Josephine Hansen, as trustee, and himself as beneficiary. In 1929 Oscar died intestate, leaving as his sole surviving heir his daughter, Virginia Hansen Vincent. The administrators of his estate, Josephine Hansen and Oscar Uhle, did not report the beneficial interest in the stock of Bear which Oscar owned at his *224 death among the assets of his estate. In 1929, after Oscar's death, his brother Albert, who had been a professor at Purdue University, undertook the management of the business of the company at the request of his mother, Josephine Hansen. Albert succeeded to Oscar's positions as president, general manager, and member of the board of directors and successfully continued the business of Bear as a one-man operation. When Albert took over his duties with Bear, his mother assigned to him title to the 2,500 shares of preferred and 2,500 shares of common stock in the Company. In 1939, Albert transferred 500 shares of preferred and 500 shares of common stock to Bear in trust for the benefit of his son, Robert Hansen. In 1940 Albert died testate and the remaining 2,000 shares of common and 2,000 shares of preferred stock were bequeathed in trust for the benefit of his wife, Alice Carmody Hansen, and his children, Robert and Florence Hansen. After Albert's death in 1940, George L. Thompson, who had been in the employ of Bear since 1932, was promoted from the position of vice president to the position of president and general manager. In 1940 Virginia Hansen Vincent's paternal uncle, Charles *225 Hansen, and his wife, Myrtle, the parents of Carl and Betty Hansen, informed Virginia through their attorneys that she was the rightful owner of all the shares of stock in Bear. Virginia retained the services of Richard S. Goldman and Gorman R. Silen as her legal counsel. In 1940 Virginia Hansen Vincent instituted suit in the Superior Court of California in and for the City and County of San Francisco against Bear and others for recovery of the stock and related relief. Virginia J. Hansen v. Bear Film Co., et al., Case No. 296,867. Charles and Myrtle Hansen supplied her with testimony and records which assisted her in establishing ownership to the stock. In order to obtain this documentary evidence, the testimony of Charles and his wife, and the services of her attorneys, Virginia Hansen Vincent entered into a written agreement with Carl and Betty Hansen and her attorneys on February 13, 1941. The material provisions of the agreement executed by Virginia, the petitioners, and Virginia's attorneys are summarized as follows: (1) Virginia agreed to pay one-half of any amounts recovered under a judgment of the Superior Court in her suit to Betty and Carl Hansen, after first deducting *226 all attorneys' fees and other litigation costs. (2) Betty and Carl Hansen agreed to pay to her one-half of any judgment they might receive by virtue of any suits brought against Bear or Albert's estate as a result of the causes of action assigned to them by Charles and Myrtle Hansen. (3) Betty and Carl agreed to advance all costs of litigation to the extent of their ability to do so, after which Virginia's attorneys agreed to advance all the necessary litigation expense. Virginia was not obligated to advance any costs. (4) Virginia's attorneys were to receive as fees for prosecuting suits for Virginia and Betty and Carl against Bear and Albert's estate, 25 per cent of the gross amounts recovered in such suits. (5) Out of the gross amounts recovered in the above legal actions, there should first be paid to Betty and Carl the litigation costs which they had advanced. Then Virginia's attorneys should be reimbursed for the litigation expenses which they had advanced. The attorneys' fees should be computed on the basis of 25 per cent of the total amounts recovered less the foregoing costs. Subsequent disputes arose between Virginia and Betty and Carl relative to the above agreement. *227 On January 7, 1946, while the suit was pending before the Supreme Court, an agreement was entered into by Virginia, Betty and Carl Hansen, and Virginia's attorneys, which modified the original agreement of February 13, 1941. The modifying provisions, as are material here, are summarized as follows: Instead of dividing the proceeds from their legal actions, one-half to Virginia and one-half to Carl and Betty, the parties agreed to apportion the amounts recovered as follows: (1) The first $50,000 of any judgment should be divided one-half to Virginia and one-half to Betty and Carl. (2) If the recoveries exceeded the sum of $50,000, the second $50,000 recovered should belong entirely to Virginia. (3) Any amounts recovered in excess of $100,000 and up to $200,000 should be divided one-half to Virginia and one-half to Betty and Carl. (4) Any amounts recovered in excess of $200,000 should be divided 65 per cent to Virginia and 35 per cent to Carl and Betty. Judgment was awarded to Virginia Hansen Vincent in 1943. Besides recovering the stock, she received money awards plus interest from the Bear Film Co. in the amount of $144,154.38. The judgment was affirmed and made final by *228 the Supreme Court of California on May 7, 1946. In 1946 when it became certain that Virginia's recovery in the litigation would be in part stock of Bear, Virginia and the petitioners Carl and Betty Hansen entered into discussions relating to the distribution of the stock under the terms of their amended agreement. It was finally decided to use the amount of $324,111.23, which a certified public accountant had computed as the value of the net assets of the company on December 31, 1945, as the basis for the valuation of the stock and its distribution. On the basis of total value in the amount of $324,111.23, it was concluded that the petitioners Carl and Betty Hansen were entitled to receive 11/40 of the 5,000 shares of stock, or 1,375 shares. [2] The sum of $34,500 was also paid to the petitioners Carl and Betty Hansen, pursuant to the amended agreement. The petitioners Carl and Betty Hansen received the stock and money in October, 1946. A "Receipt of Assignees," signed by the petitioners Carl and Betty Hansen, was filed in the Superior Court of California on October 11, 1946. It recited the receipt by the petitioners Carl and Betty Hansen of 687 1/2 shares of preferred stock and 687 *229 1/2 shares of common stock and the amount of $34,500 from Virginia Hansen Vincent in full discharge of their claims against her under the agreement of February 13, 1941, as amended. Thereupon the petitioners Carl and Betty Hansen paid one-fifth of what they had received from Virginia - 137 1/2 shares of common and 137 1/2 shares of preferred stock and the sum of $6,900 - to the petitioner Benjamin C. Mickle in consideration for certain legal services which he had rendered to them. The stock received by each of the petitioners constituted a minority interest. Earnings in the photo finishing business fluctuate widely from year to year, being dependent on a number of variables. The earnings of the business are very susceptible to increased competition and are almost entirely dependent upon weather conditions. It is a seasonal business with the largest volume of business coming in the late spring, summer, and early fall, when optimum weather conditions generally prevail for the taking of pictures. Labor costs in the photo finishing business form a large *230 part of the cost of doing business, generally ranging from 30 to 60 per cent of total costs. The net income of Bear after taxes and the net income per share of common and preferred stock for the years 1936 to 1948, inclusive, were as follows: Net Income
per Share of
Net
Common and
Year
Income
Preferred Stock
1936
$ 24,529.22
$ 4.91
1937
33,770.40
6.75
1938
24,805.73
4.96
1939
20,556.43
4.11
1940
8,131.55
1.63
1941
107.76
.02
1942
39,677.02
7.94
1943
24,212.36
4.84
1944
25,764.55
5.11
1945
28,840.68
5.77
1946
(5,538.76) *
(1.11)
1947
22,941.30
4.59
1948
(39,245.54)
(7.85)
Earnings were depressed in 1940 and 1941 because of additional competition and prolonged price wars during that period. After the war competition again was substantially increased. Although the photo finishing business requires specialized skills, many returning veterans, who had acquired photography skills while in the Armed Services, went into the business in 1946. During the first nine months in 1946 Bear operated at a profit, but increased *231 labor costs during the last three months of the year resulted in the net loss which Bear sustained for that year. Employees' wages were again increased in 1947 and 1948 pursuant to new union contracts entered into by Bear in each year. George Thompson was retained as president and general manager of the business of the corporation after Virgina Hansen Vincent assumed ownership of the controlling interest. In 1946 his annual compensation was increased from the amount of $9,000 to the amount of $12,000. For seven months of services which he rendered in 1946 as operating manager, J. D. Vincent, Virginia's husband, received salary from Bear in the aggregate amount of $8,250. In 1947 J. D. Vincent's salary was fixed at the sum of $15,000 per year. In 1946 A. B. Bianchi was employed by Bear as general counsel at a retainer fee of $750 per month. While Bear was well equipped in 1946 with the machinery and supplies necessary for its business, it was faced with the prospect of having to replace much of its costly equipment soon. Machinery was impossible to replace during the war so that in 1946 much of Bear's equipment was rapidly becoming obsolete. Ordinarily the equipment used in the *232 photo finishing business has a very short useful life because of its constant exposure to acids and chemicals. The balance sheet of Bear on December 31, 1945, and December 31, 1946, was as follows: December
December
Assets
31, 1945
31, 1946
Cash
$ 122,780.01
$ 50,417.78
Notes and Accounts
Receivable
41,667.14
59,135.85
Inventories
48,687.18
49,231.80
Investments in Govern-
mental Obligations
90,000.00
Goodwill Purchased
30,028.15
36,093.15
Branch stores, net investment
Total Capital Assets
109,274.21
131,905.35
Reserve for Depreciation
63,143.04
67,834.24
Land
17,486.88
17,486.88
Refund Claim, Income
Taxes
63,928.64
Post War Tax Credit
Bonds for Employees
30.87
Deferred Expense
1,843.50
3,862.47
$ 398,624.03
$ 344,258.55
Liabilities
Bank Account, Overdraft
$ $ Accounts Payable
14,714.79
39,664.82
Notes Payable -
Maturity, Less than
1 yr.
30,000.00
Maturity, More than
1 yr.
34,402.12
Miscellaneous Taxes
9,058.33
8,748.24
Federal Taxes
39,409.02
Account With
Stockholder
Accrued Interest
187.50
Accrued Payroll Items
5,676.81
Contingent Account
Virginia Hansen,
Transferee
4,783.47
Capital Stock
Preferred Stock
2,500.00
2,500.00
Common Stock
2,500.00
2,500.00
Earned Surplus
296,039.77
250,197.71
Total Liabilities and
Capital
$ 398,624.03
$ 344,258.55
*233 On the books of the company the fixed assets were conservatively valued at cost less depreciation, which amount was lower than their fair market value. The balance of earned surplus on December 31 of the years 1937 to 1948, inclusive, was as follows: Year
Earned Surplus
1937
$ 165,460.84
1938
163,423.97
1939
164,488.16
1940
169,488.51
1941
164,767.48
1942
229,200.88
1943
242,536.53
1944
$ 267,329.43
1945
296,039.77
1946
250,197.71
1947
276,328.29
1948
236,777.65
No dividends had been declared or paid by the company subsequent to 1941. On December 31, 1945, and December 31, 1946, Bear had net working capital in the respective amounts of $149,952.19 and $74,508.06. The net worth of Bear on December 31, 1945, was in the amount of $301,039.77 and on December 31, 1946, it was in the amount of $255,197.71. Bear had installed a color laboratory in 1946 in order to take advantage of the business resulting from color processing which was a new development in the photo finishing field. In 1947 Bear entered into an arrangement with the Ansco Co., a film manufacturer, whereby Bear was to represent the Ansco Co. in the processing of of color film *234 in California. The company was one of a number of processors throughout the country selected by the Ansco Co. on the basis of the quality of its work. Subsequent to their becoming stockholders in Bear, a dispute arose between the petitioners Carl and Betty Hansen as minority stockholders and Virginia Hansen Vincent as majority stockholder in reference to the management and policies of the company. The petitioners were disgruntled primarily by their lack of representation on the board of directors, the increase in George Thompson's salary, the employment of J. D. Vincent at a relatively high salary for a person inexperienced in the business of Bear, and the failure of the board of directors, which was controlled by the majority stockholder, to declare and pay dividends on the stock. The petitioner Carl Hansen was then elected to the board of directors. Nevertheless, the petitioners Carl and Betty Hansen were still not satisfied with their status as minority stockholders. Finally in the latter part of 1947 Judge Zook, their attorney, suggested to A. B. Bianchi, attorney for Bear and Virginia Hansen Vincent, that those in control of Bear submit a bid price for the stock held by the *235 petitioners Carl and Betty Hansen and purchase it from them. At about that time George Thompson expressed an interest in acquiring some of the stock. Being president of Bear, he felt that he should also be represented in the ownership of the company as a stockholder. When Thompson informed A. B. Bianchi in January, 1948, that he definitely wanted to purchase the stock held by the petitioners Carl and Betty Hansen, Bianchi told him that the total price for the 1100 shares was $65,000 or about $59 per share. The price was acceptable to Thompson; he did not attempt to purchase the stock at a lower amount. Bianchi on behalf of Thompson then submitted an offer in the aggregate amount of $65,000 for the purchase of the stock, and it was accepted by the petitioners Carl and Betty Hansen through their attorney. The sale was executed on February 4, 1948. Thompson made a down payment in the amount of $30,000 toward the purchase price of the stock, agreeing to pay the balance of the purchase price in installments. The stock was to be held in escrow by Judge Zook until the full purchase price had been paid. The stock was then to be turned over to Thompson. In order to enable Thompson to buy *236 the stock, Bianchi and the Vincents had agreed to loan him any part of the amounts which he would need to meet the installment payments on the stock. Pursuant to this agreement, Thompson borrowed certain sums from Bianchi. The petitioner Benjamin Mickle endeavored to increase a loan account which he had at a bank by depositing the stock, as collateral, for the loan. He was unsuccessful, however, because the bank did not consider the stock acceptable as collateral. In 1948, after the petitioners Carl and Betty Hansen had sold their stock, the petitioner Benjamin Mickle assigned his 275 shares of stock to Bianchi for consideration in the aggregate amount of $16,500 or $60 per share. At the time that the sale was consummated, the petitioner Benjamin Mickle was aware of the controversy that had developed between the other petitioners and Virginia Hansen Vincent and the sale of their shareholdings by the other petitioners as a result thereof. The company stock was not listed on the stock exchange. Other than the sales by the petitioners in 1948, there was no trading of the stock in recent years. Neither was there a record of any bid or asked prices. The fair market value of the common *237 stock and preferred stock received by the petitioners was $59 per share in October, 1946. Opinion Issue 1. In Docket Nos. 29419 and 29420, Betty Hansen and Carl Hansen, petitioners, there was presented in the pleadings the question whether income, under section 22(a) of the Code, was received in 1946, represented by the value of the 687 1/2 shares of stock of Bear Film Co. which each petitioner received from Virginia Hansen Vincent. On brief the petitioners Betty and Carl Hansen have not argued this question. We assume and conclude, therefore, that they have abandoned this issue, and that they now agree that they realized income upon receipt of the stock. In Docket No. 29421, Benjamin C. Mickle, petitioner, no such issue was raised regarding the shares of Bear stock which he received from the Hansens as compensation for legal services which he rendered. The amount of income realized by each petitioner is to be computed on the basis of this Court's determination of the fair market value in October, 1946, of the stock of Bear Film Co. Issue 2. The question to be decided is the fair market value in October, 1946, of the shares of preferred and common stock of the Bear Film *238 Co. which were received by the petitioners. For the purposes of this proceeding the parties have agreed to treat the shares of preferred and common stock as having the same value in October, 1946. The petitioners contend that the stock had a fair market value of not more than $25 per share, while the respondent has determined that the stock had a value of $61.17 per share in October, 1946. After considering all of the evidence, it has been found as a fact that the stock had a fair market value of $59 per share in October, 1946. The petitioners, under their contention, have relied chiefly on the value of the net assets of the Bear Film Co. on December 31, 1945, as determined by a certified public accountant. He valued the net assets for the purpose of obtaining a basis for apportioning the stock recovered by Virginia Hansen Vincent under the judgment of the California Superior Court. Agreements executed in 1941 and 1946 provided for the division among Virginia Hansen Vincent, the petitioners Carl and Betty Hansen, and Virginia's attorneys of what Virginia recovered in her litigation against the Bear Film Co. and others. It is our opinion that the petitioners have failed to recognize *239 the importance of some of the factors which are material in determining the fair market value of the stock. In our best judgment the value of $25 per share, for which they contend, is too low. Especially important, as reflecting the amount at which a willing buyer and a willing seller would have contracted a sale of the stock in October, 1946, are sales of the stock made close to the time the petitioners received the stock. On February 4, 1948, the petitioners Carl and Betty Hansen sold their combined total of 1100 shares of stock to George Thompson, president of the Bear Film Co., for the sum of $65,000, or $59.09 per share. Subsequently in 1948, the petitioner Benjamin Mickle sold his 275 shares of stock to A. B. Bianchi, attorney for the Bear Film Co. for the aggregate amount of $16,500, or $60 per share. The petitioners discount the probative effect of the evidence relating to the above sales on the ground that they do not represent arms' length transactions. We recognize that the negotiations of purchase and sale were not conducted in the open market; that George Thompson was the president of the Bear Film Co.; that he, as president of the Company, was vitally interested in *240 being represented in the ownership of the Company; and that his position as president was made more secure as a result of his becoming a stockholder. We also recognize the fact that Thompson and petitioners Carl and Betty Hansen did not directly participate in the negotiations surrounding the sale; that Thompson's attorney, A. B. Bianchi, originally suggested the price at which the sale was ultimately consummated; and that the prospects of the continuation of Bianchi's employment by the Bear Film Co. as its attorney for a monthly retainer fee in the amount of $750 improved measurably on account of his acquisition of Benjamin Mickle's stock. However, notwithstanding the above facts, we are of the opinion that the amounts at which the stock was sold in 1948 are to be given weight in determining the fair market value of the stock in October, 1946. It is true that the petitioners sold the stock at a time more than one year after the valuation date. However, the evidence before us shows that the condition of the business of the Company had not changed substantially between October, 1946, and February, 1948. Although the Bear Film Co. sustained a loss in 1946, the Company had been operating *241 at a profit for the first nine months of 1946 and had a favorable earnings record in October, 1946. In February, 1948, the Company also had an impressive earnings record, having realized a net profit during the previous year. While we are of the opinion that the petitioners have undervalued the stock, we have concluded that the value which the respondent has determined is too high. The respondent has placed too great emphasis on the net worth of the Bear Film Co; and upon a value which the parties to another tax proceeding, pending in this Court, stipulated. These petitioners are not parties to the other proceeding, and, also, they have presented evidence in this proceeding. Each case stands on its own facts. We have considered net worth; the sales of the stock; the circumstances surrounding the sales; and other factors which are relevant in determining the fair market value of stock. Some of the other factors which we have considered are the following: the history of earnings; accumulated surplus; dividends paid in prior years; dividend-paying capacity; the indebtedness of the Company; net working capital; tangible assets and their condition; and intangible assets including goodwill. *242 Other factors which we believe are of importance are that ownership of the controlling interest in the business of Bear was initially assumed by Virginia Hansen Vincent in 1946; that J. D. Vincent, who had no previous experience in the kind of business carried on by Bear, was employed as operating manager; that officers' salaries were increased in 1946; that Bear had recently engaged in protracted and costly litigation; that the shares of stock received by the petitioners constituted a minority interest; that the stock of Baer was rejected by a bank as collateral security for a loan; that was closely held; that it was not listed on the stock exchange; and that the stock was not traded over the counter. On the basis of all the evidence we have concluded that the shares of common and preferred stock of the Bear Film Co. had a fair market value of $59 per share in October, 1946. Decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Carl L. Hansen and Norma W. Hansen, Docket No. 29420, and Benjamin C. Mickle, Docket No. 29421. n* This opinion has been vacated and set aside by Tax Court order dated July 25, 1952. New opinion is reported at CCH Dec. 19,122(M). - CCH.↩
2. The record is not clear as to whether the attorneys received their fees under the agreement in the form of money or stock.↩
*. The amount of the judgment rendered against Bear in 1946 was not deducted from gross income.↩